**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**WHITEFACE REAL ESTATE**
**DEVELOPMENT AND**
**CONSTRUCTION, LLC,**

                        **Plaintiff,**              **8:08-cv-24**
                                             **(GLS/DRH)**

        **v.**

**SELECTIVE INSURANCE COMPANY**
**OF AMERICA,**

                        **Defendant.**
_____

**APPEARANCES:**                **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Thorn, Gershon Law Firm        ARTHUR H. THORN, ESQ.
5 Wembley Court              ERIN P. MEAD, ESQ.
New Karner Road
P.O. Box 15054
Albany, NY 12212-5054

**FOR THE DEFENDANT:**
Goldberg, Segalla Law Firm      SHARON ANGELINO, ESQ.
665 Main Street, Suite 400      THOMAS F. SEGALLA, ESQ.
Buffalo, NY 14203

**Gary L. Sharpe**
**District Court Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Whiteface Real Estate Development and Construction, LLC brought this action against defendant Selective Insurance Company of America, alleging that Selective is obligated to provide coverage for a fire loss and breached the builder's risk policy by disclaiming coverage. (*See* Am. Compl., Dkt. No. 29.)[1]  Pending are Whiteface and Selective's vying motions for summary judgment. (Dkt. Nos. 56, 66.)  For the reasons that follow, Whiteface's motion is denied, and Selective's motion is granted in part and denied in part.

### II. Background

Plaintiff Whiteface, a company that builds and develops residential property, had a builder's risk insurance policy with defendant Selective for the period of January 29, 2007, to January 29, 2008. (*See* Pl. SMF ¶¶ 2-3, Dkt. No. 59.)  The policy covered a job site where Whiteface was building residences on Whiteface Inn Road, Lake Placid, New York. (*See id.* at ¶¶ 5-6.)  Included in these buildings was a two-home building, or duplex, that

---

[1]In a prior Decision and Order issued on May 13, 2009, the court dismissed Whiteface's claims that Selective acted with bad faith in violation of N.Y. INS. LAW § 2601(a) and engaged in a deceptive act or practice in violation of N.Y. GEN. BUS. LAW § 349. (*See* Dkt. No. 34.)

contained two dwellings, Unit 7 and Unit 8.  (*See id.*)  As a duplex, Units 7 and 8 share a common wall, fire wall, roof, and foundation.  (*See id.* at ¶ 31; *see also* Def. SMF ¶ 15, Dkt. No. 66:3.)  However, Units 7 and 8 have separate deeds, titles, tax identification numbers, addresses, entrances, and utilities, and were built on separately deeded lots.  (*See* Pl. SMF ¶¶ 32, 34, Dkt. No. 59.)  Additionally, separate building permits and certificates of occupancy were required for each unit.  (*See id.* at ¶ 33.)

On March 7, 2007, a fire that began in Unit 7 destroyed Unit 7 and Unit 8.  (*See id.* at ¶¶ 7, 49.)  On the date of the fire, Unit 7 was owned by Alan Rosenblum.  (*See id.* at ¶ 9.)  While the parties dispute whether Unit 7 was occupied at the time, a certificate of occupancy was issued for Unit 7 in January 2007.  (*See id.* at ¶ 10.)  In addition, Rosenblum had obtained a homeowner's policy for Unit 7 issued by Atlantic Mutual Insurance Company, which covered Rosenblum's claims for the fire loss to Unit 7 and for the consequent loss of rental income.  (*See id.* at ¶ 13.)  Rosenblum, seeking compensation for his uninsured loss, and Atlantic Mutual, as subrogee of Rosenblum, subsequently commenced actions against Whiteface.  (*See id.* at ¶ 14.)  Pursuant to Whiteface's commercial liability insurance coverage, Selective defended, covered, and settled these

claims.  (*See id.* at ¶ 15.)

As to Unit 8, Whiteface gave notice of the incident to Northern Insuring Agency on March 7, who in turn notified Selective of the claim on March 8.  (*See* Sperling Aff. ¶ 7, Dkt. No. 60; *see also* Mead Aff., Ex. RR, Dkt. No. 57:77.)  And although Whiteface was continuing construction on Unit 8, Selective denied coverage for Unit 8 on the ground that coverage for the building ceased when part of the building, Unit 7, became occupied by Rosenblum.  (*See* Pl. SMF. ¶ 25, Dkt. No. 59.)  Specifically, Selective disclaimed coverage under section E(2)(d) of the policy's Builders Risk Coverage Form (CM 71 05 11 91), which stipulates that coverage will end when one of the following conditions first occurs:

(1)   This policy expires or is cancelled;
(2)   The property is accepted by the owner;
(3)   Your interest in the property ceases;
(4)   You abandon the construction with no intention to complete it; or
(5)   Unless we specify otherwise in writing ... (b) [w]hen any Covered Property is: (1) [o]ccupied in whole or in part ....

(Mead Aff., Ex. K2, pt. 4 at 28, Dkt. No. 57:22.)  The term "covered property" is defined as "[b]uildings and structures while in the course of construction, erection or fabrication at the 'job site' described in the Declarations."  (*Id.* at 25.)  However, the policy does not define "building" or

"occupied."

Under the sale and construction contract between Whiteface and Rosenblum, Whiteface bore the risk of loss for any damage to Units 7 or 8 until title and ownership passed to Rosenblum.  (*See* Mead Aff., Ex. F2, Dkt. No. 57:8.)  Whiteface was also obligated under the contract to obtain builder's risk insurance to cover Units 7 and 8 during the construction. (*See id.*)  As a result of the fire, which was a total loss, Whiteface incurred costs in cleaning up the debris and rebuilding Unit 8 in accordance with its contractual obligations.  (*See* Pl. SMF ¶¶ 49-50, Dkt. No. 59.)  The parties dispute whether other insurance coverage existed for Unit 8.  (*Compare id.* at ¶ 28, *with* Def. SMF ¶ 28, Dkt. No 79.)

On January 8, 2008, Whiteface filed suit against Selective, seeking a declaratory judgment that Selective is obligated to provide coverage for the damages sustained as a result of the fire to Unit 8.  (*See* Am. Compl., Dkt. No. 29.)  Whiteface also asserted claims against Selective for breach of the builder's risk policy, consequential damages, bad faith under New York Insurance Law, and violations of New York General Business Law. (*See id.*)  However, the claims asserted under New York Insurance Law and General Business Law were dismissed on May 13, 2009.  (*See* Dkt. No.

34.)  Following discovery, Whiteface and Selective each moved for

summary judgment.  (*See* Dkt. Nos. 56, 66.)

### III.  Standard of Review[2]

The standard for the grant of summary judgment is well established,

and will not be repeated here.  For a full discussion of the standard, the

court refers the parties to its previous opinion in *Bain v. Town of Argyle*,

499 F. Supp.2d 192, 194-95 (N.D.N.Y. 2007).

### IV.  Discussion

### A.    Declaratory Relief and Coverage

"In determining a motion for summary judgment involving the

construction of contractual language, a court should accord that language

its plain meaning giving due consideration to the surrounding

circumstances and apparent purpose which the parties sought to

accomplish."  *Thompson v. Gjivoje*, 896 F.2d 716, 721 (2d Cir. 1990)

(internal quotation marks and citation omitted).  However, "[w]here

---

[2]Neither party disputes that New York law controls here since (1) the property at issue is located in New York, (2) the underlying events occurred in New York, (3) the policy was issued to Whiteface as a New York policy by an agent located in New York, and (4) Whiteface, as the insured, is a resident of New York.  (*See* Pl. Mem. of Law at 3, Dkt. No. 58; *see also* Def. Mem. of Law at 11-12, Dkt. No. 66:17.)  Accordingly, the court will apply New York State substantive law and federal procedural law.  *See Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 427 (1996); *see also Hanna v. Plumer*, 380 U.S. 460, 473-74 (1965); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *McCarthy v. Olin Corp.*, 119 F.3d 148, 153 (2d Cir. 1997).

6

contractual language is ambiguous and subject to varying reasonable

interpretations, intent becomes an issue of fact and summary judgment is

inappropriate." *Id.* (citation omitted); *see also Seiden Assocs. v. ANC*

*Holdings, Inc.*, 959 F.2d 425, 248-29 (2d Cir. 1992).

As a threshold matter, whether a contract term is ambiguous

presents a question of law for the court. *See Walk-In Med. Ctrs., Inc. v.*

*Breuer Capital Corp.*, 818 F.2d 260, 263 (2d Cir. 1987); *see also*

*Bethlehem Steel Co. v. Turner Constr. Co.*, 2 N.Y.2d 456, 460 (N.Y. 1957)

("[W]hen a contract is clear in and of itself, circumstances extrinsic to the

document may not be considered and that where the intention of the

parties may be gathered from the four corners of the instrument,

interpretation of the contract is a question of law ...." (citations omitted)).  A

word or phrase is ambiguous if it is susceptible to multiple meanings "when

viewed objectively by a reasonably intelligent person who has examined

the context of the entire integrated agreement and who is cognizant of the

customs, practices, usages and terminology as generally understood in the

particular trade or business." *Eskimo Pie Corp. v. Whitelawn Dairies, Inc.*,

284 F. Supp. 987, 994 (S.D.N.Y. 1968) (citing, inter alia, *Fox Film Corp. v.*

*Springer*, 273 N.Y. 434 (N.Y. 1937)).  "Ambiguity with respect to the

meaning of contract terms can arise either from the language itself or from

inferences that can be drawn from this language." *Alexander & Alexander*

*Servs., Inc. v. These Certain Underwriters at Lloyd's London*, 136 F.3d 82,

86 (2d Cir. 1998).  Accordingly, if the court finds the language at issue

unambiguous, then it "may construe the contract as a matter of law and

grant summary judgment." *Cable Sci. Corp. v. Rochdale Vill., Inc.*, 920

F.2d 147, 151 (2d Cir. 1990) (citation omitted).  However, "summary

judgment is perforce improper unless the terms of the agreement are

wholly unambiguous and no material facts are in dispute." *Leberman v.*

*John Blair & Co.*, 880 F.2d 1555, 1559 (2d Cir. 1989) (internal quotation

marks and citation omitted).

Where an insurer asserts an exclusion or exception to disclaim

coverage, the "justification for denying coverage is strictly limited to the

ground stated in the notice of disclaimer." *Shell v. Fireman's Fund Ins. Co.*,

17 A.D.3d 444, 446 (2d Dep't 2005) (citations omitted).  "Any such

exclusions or exceptions from policy coverage must be specific and clear in

order to be enforced ... [and] are not to be extended by interpretation or

implication, but are to be accorded a strict and narrow construction."

*Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 311 (N.Y. 1984)

(citations omitted).  The rationale behind this rule is that ambiguities should be resolved against the drawer of the contract, who is typically the insurer. *See Marcus v. U.S. Cas. Co.*, 249 N.Y. 21, 24-25 (N.Y. 1928).  In other words, "it would be unfair to deprive an insured of coverage which in view of the language of the policy was reasonably anticipated." *Breed v. Ins. Co. of N. Am.*, 46 N.Y.2d 351, 357 (N.Y. 1978).  Accordingly, it is the insurer that "generally bears the burden of proving that the claim falls within the scope of the exclusion." *Vill. of Sylvan Beach, N.Y. v. Travelers Indem. Co.*, 55 F.3d 114, 115 (2d Cir. 1995) (citation omitted).  And in order to carry this burden, the insurer "must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." *Cont'l Cas. Co. v. Rapid-Am. Corp.*, 80 N.Y.2d 640, 652 (N.Y. 1993) (citation omitted).  Therefore, "[i]f a term can be reasonably interpreted in two ways, a court must construe the language in accordance with the reasonable expectations of the average insured individual, reading the policy and employing common language skills." *U.S. Underwriters Ins. Co. v. Affordable Hous. Found., Inc.*, 256 F. Supp.2d 176, 181 (S.D.N.Y. 2003) (citations omitted).

Here, at the threshold, the builder's risk policy issued by Selective is

9

ambiguous regarding whether Unit 8 constituted a separate property under the policy.  Besides failing to define the term "buildings and structures," the policy is ambiguous as to whether the term "property" used in section E(2)(d)(2) and E(2)(d)(3) of the Builders Risk Coverage Form (CM 71 05 11 91) is the same as the term "Covered Property" used in section E(2)(d)(5). (*See* Mead Aff., Ex. K2, pt. 4 at 25, 28, Dkt. No. 57:22.)  Thus, upon consideration of the apparent purpose of and the circumstances surrounding the agreement, the court concludes that the policy is susceptible to varying reasonable meanings.

In light of the policy's facial ambiguity, questions of fact remain regarding the parties' intentions and the circumstances surrounding the drafting and application of the policy.  In particular, it is unclear whether and to what extent Selective knew about the nature of the structures Whiteface intended to construct and whether the builder's risk policy contemplated the unit-by-unit distinction advanced by Whiteface. Moreover, a reasonable jury could find Selective's admission that Unit 8 was still covered under the policy after Unit 7 was conveyed to Rosenblum, (*see* Angelino Decl. at 2 n.1, Dkt. No. 72), inconsistent with Selective's assertion that Units 7 and 8 constitute a single property under the policy.

10

Additionally, while the issue of whether Unit 7 was occupied at the time of the fire may ultimately be of no consequence, disputes of fact exist regarding whether the actions taken by Rosenblum constituted actual occupancy.  Therefore, based on these and other questions of material fact, summary judgment is not warranted.  Accordingly, the court denies both Whiteface and Selective's motions insofar as they concern Selective's obligation to provide coverage for Whiteface's fire loss.

**B.**   **Breach of Contract**

Whiteface alleges in its second cause of action that Selective willfully and intentionally breached the contract by disclaiming coverage in the manner it did, and that Selective is accordingly liable for, among other things, punitive damages. (*See* Compl. ¶¶ 27-31, Dkt. No. 29.) Preliminarily, however, in addition to the fact that Whiteface seems to have retreated from the allegations of willfulness and the demand for punitive damages, (*see* Pl. Mem. of Law at 11-13, Dkt. No. 58), such claims without more merely amount to an action for breach of contract.[3]  Whiteface has

---

[3]Absent a breach of a legal duty independent of the contract, mere allegations "that the breach of contract duty arose from a lack of due care will not transform a simple breach of contract into a tort." *Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 551 (N.Y. 1992) (citations omitted).  In other words, even where an insured alleges that the insurer's failure to adequately investigate a claim was careless, negligent, reckless, or vindictive, such language sounding in tort, absent an actual underlying tort duty, is insufficient to transform an action for breach of the

failed to allege or demonstrate conduct sufficient to establish an actionable

independent tort or to warrant punitive damages.  Therefore, insofar as the

court's prior May 13, 2009 Order did not dismiss these aspects of

Whiteface's second cause of action, (*see* Dkt. No. 34), the court dismisses

Whiteface's tort and punitive damages claims.

Whiteface's claim for breach of the builder's risk policy centers

around the rule that "implicit in contracts of insurance is a covenant of good

faith and fair dealing, such that a reasonable insured would understand that

the insurer promises to investigate in good faith and pay covered claims."

*Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*, 10 N.Y.3d 187, 194

(N.Y. 2008) (internal quotation marks and citation omitted); *see also*

*Canstar v. J.A. Jones Constr. Co.*, 212 A.D.2d 452, 453 (1st Dep't 1995)

("[A]n implied covenant of good faith and fair dealing is intrinsically tied to

---

implied covenant of good faith and fair dealing into a tort action.  *See N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 319-20 (N.Y. 1995); *see also Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y. 2d 382, 390 (N.Y. 1987).  "Thus, where [an insured] is essentially seeking enforcement of the bargain, the action should proceed under a contract theory."  *Sommer*, 79 N.Y. 2d at 552 (citation omitted).  Whiteface's claim for punitive damages must also be rejected in light of Whiteface's allegations and the evidence on record.  In general, "damages arising from the breach of a contract will ordinarily be limited to the contract damages necessary to redress the private wrong, but ... punitive damages may be recoverable if necessary to vindicate a public right."  *N.Y. Univ.*, 87 N.Y.2d at 315 (citations omitted).  It is only in limited circumstances, where the breaching party's conduct evinces a "high degree of moral turpitude and demonstrat[es] such wanton dishonesty as to imply a criminal indifference to civil obligations," that punitive damages may be recoverable.  *Rocanova v. Equitable Life Assurance Soc'y of U.S.*, 83 N.Y.2d 603, 613 (N.Y. 1994) (internal quotation marks and citation omitted).

the damages allegedly resulting from a breach of contract." (citation omitted)).  Accordingly, Selective was obligated under the policy to perform a reasonable investigation of Whiteface's claims and disclaim coverage upon a reasonable basis for denial.  A failure to do so would constitute a breach of the policy.  *See Fasolino Foods Co., Inc. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir. 1992).

Here, questions of material fact exist as to whether Selective investigated Whiteface's claim with reasonable diligence and whether it had a reasonable basis in disclaiming coverage under the policy. Specifically, the parties dispute the steps taken by Selective's claims adjuster in investigating the claim and whether such steps were adequate. It is further disputed whether Selective's review of the adjuster's findings was performed reasonably and in good faith and whether the denial of coverage was reasonable based on the information available to Selective. Accordingly, the court denies Whiteface and Selective's motions for summary judgment on the issue of contract breach.

## C.  Consequential Damages

"An insured may recover foreseeable damages, beyond the limits of its policy, for breach of a duty to investigate, bargain for and settle claims in

13

good faith." *Panasia Estates, Inc. v. Hudson Ins. Co.*, 39 A.D.3d 343, 343 (1st Dep't 2007) (citation omitted), *aff'd*, 10 N.Y.3d 200 (N.Y. 2008). Typically, a nonbreaching party is limited to "recover general damages which are the natural and probable consequence of the breach." *Kenford Co. v. County of Erie*, 73 N.Y.2d 312, 319 (N.Y. 1989).  Yet, in appropriate circumstances, the breaching party may be additionally liable for consequential damages as long as "such unusual or extraordinary damages [had] been brought within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting." *Chapman v. Fargo*, 223 N.Y. 32, 36 (N.Y. 1918).  Factors to consider in evaluating the parties' reasonable contemplation should include "the nature, purpose and particular circumstances of the contract known by the parties ... as well as what liability the defendant fairly may be supposed to have assumed consciously, or to have warranted the plaintiff reasonably to suppose that it assumed, when the contract was made." *Kenford*, 73 N.Y.2d at 319 (internal quotation marks and citations omitted).  However, "proof of consequential damages cannot be speculative or conjectural." *Bi-Economy*, 10 N.Y.3d at 193 (citation omitted).

Here, in addition to seeking costs incurred in cleaning up the fire loss,

reconstructing Unit 8, and the attendant interest, Whiteface seeks

consequential damages for interest paid on a loan it took out to cover

reconstruction costs and for attorneys' fees and costs.  In an attempt to

refute this claim for consequential damages, Selective relies on section

B(2)(a) of the policy's Builders Risk Coverage Form (CM 71 05 11 91),

which states: "[w]e will not pay for a 'loss' caused by or resulting from ...

[d]elay, loss of use, loss of market or any other consequential loss."  (Mead

Aff., Ex. K2, pt. 4 at 26, Dkt. No. 57:22.)  However, this clause is neither

legally nor factually conclusive.  First, an insurance policy's "exclusion for

consequential loss does not bar the recovery of consequential damages"

resulting from the insurer's breach of the covenant of good faith and fair

dealing.  *Panasia*, 10 N.Y.3d at 203 (citation omitted).  Second, a

reasonable fact finder could conclude that the consequential damages

sought by Whiteface were reasonably contemplated by the parties and are

necessary to return Whiteface to where it would have been had coverage

been provided.  *See Bi-Economy*, 10 N.Y.3d at 195 ("[L]imiting an insured's

damages to the amount of the policy, i.e., money which should have been

paid by the insurer in the first place, plus interest, does not place the

insured in the position it would have been in had the contract been

performed." (citations omitted)).  Therefore, the court is unable to determine as a matter of law whether Whiteface is entitled to consequential damages, and accordingly denies the parties' summary judgment motions on that issue.

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Whiteface's motion for summary judgment (Dkt. No. 56) is **DENIED**; and it is further

**ORDERED** that Selective's motion for summary judgment (Dkt. No. 66) is **GRANTED** insofar as Whiteface's tort and punitive damages claims contained in Count II are **DISMISSED**; and it is further

**ORDERED** that Selective's motion for summary judgment is **DENIED** as to Whiteface's remaining claims for declaratory relief, breach of contract, and consequential damages; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

June 14, 2010
Albany, New York

Gary L. Sharpe
United States District Court Judge

16